## ANGEL CASAS *v.* THE STATE.

EVIDENCE.— See this case for evidence *held* insufficient to sustain a conviction for theft.

APPEAL from the District Court of Cameron. Tried below before the Hon. J. C. RUSSELL.

The indictment in this case was filed in the District Court of Cameron county, January 3d, 1882. It charged the defendant and Refugio Gomez jointly with the theft from the tailor shop of Andreas Fierling, of dress goods over the value of twenty dollars. The trial of this defendant resulted in his conviction, and the punishment awarded him by the jury was a term of two years in the penitentiary.

Andreas Fierling was the first witness introduced by the State. He testified that, at the time of the theft, about the first day of June, 1881, he was the proprietor of a tailor shop, situated in front of the steamboat office in the city of Brownsville, Texas. Everything of value which was stored in the shop was taken on the occasion referred to. The articles mentioned in the indictment being read over to the witness he identified the following: One black cap, one black vest, two gray vests, one pair of soldier's pants, two pair of black pants, one coat and pair of pants, one cassimere coat, one black coat, one cassimere vest without a back, trimmings, and one pocket knife. He gave the value of each article, and testified that their aggregate value was $35. The witness recovered the articles named through Mr. Storms, a justice of the peace. They were stolen in the morning between three and four o'clock. The witness had suffered with tooth-ache up to three o'clock, and between four and five o'clock he heard a noise in the shop; and, proceeding to investigate it, he discovered that the establishment had been "cleaned out." The goods were taken in June or July of 1881, and the taking was without the consent of the witness. The witness gave Mr. Pecina a sample of the goods lost, and recovered goods corresponding with the samples.

On his cross-examination the witness stated that the man whom he thought took the goods was a man who stayed about the steamboat office, until about a month after the robbery. The witness did not know the man's name, but considered him a very good friend until he began to miss articles every day, after this man's visits to his shop. The witness missed articles invariably after this man's visits to his shop, which was the reason of his suspicion. The loss of the knife and a pocket handkerchief, on two separate occasions following the visits of this man, was particularly spoken of by the witness. The man was a Mexican and disappeared soon after the dis-

covery of the stolen goods.   Some of the stolen goods
fitted the man exactly, and these the witness had never
recovered.   The defendant resembled the man spoken of,
but the witness could not positively identify him as the
same.   If the defendant was not the man, then defendant
was never about the shop — or if so, the witness did not
know it.

On re-direct examination the witness said the man he
spoke of was about the height and strength of the defend-
ant, and the clothes referred to would fit the defendant.
He proved the venue and want of consent.

D. Buterera testified, for the State, that he was a police
officer at the time of the robbery, and as such executed
the search warrant under which the goods were recovered
at the house of Pedro Alvarez.   The articles there found
were those described in the indictment.   He found at
Pedro Alvarez's house, when he executed the search
warrant, Pedro, his wife, three daughters, and this defend-
ant.   The latter, when found, was asleep in a little room.
None of the articles removed were found in the large
family room, but for the most part were found in a box
under a bed, in the small room occupied by the defendant.
The witness found some of the articles under a mattress
in a large room, and some in a trunk in the same room.
The witness had never seen the defendant before that
day.

Over the objection of defendant, the witness testified
that he found other stolen property in the house besides
that named in the indictment.   A saddle was found in
the defendant's room, which was turned over to the
owner, Faustino Villareal.   A pair of saddle bags contain-
ing a pair of spurs and ordinary toilet articles were found
in defendant's room, which were claimed by and turned
over to him.

Cross-examined, the witness stated that he did say on
the trial of Alvarez, the day before this trial, that, when

he searched the house under the warrant, he heard a stamping like some one leaving the house. He·said nothing about this on his direct examination on this trial, because he was not asked about it. Pecino was about the premises and saw the shadow of some one running off. The witness saw a bed just outside the door, which had the appearance of being recently occupied, but the witness saw no shoes near or under it. On his return to the house, the next day, the witness was told that Gomez fled on his approach the day before.

The house is an ordinary grass covered jacal, divided very nearly in the middle; one division being subdivided, forming the small room and kitchen. The witness found Pedro Alvarez, his wife and three daughters in the large room, and read the warrant to them, about one o'clock. There was an open space or hole for a door leading into the room where the defendant was. The defendant heard the warrant read, and got up, but made no effort to escape. The witness first searched the trunks. In one he found the pair of soldier's pants and some ladies' wearing apparel; in another a lot of trimming and a gray waistcoat in which there was no back. He next found, under the mattress, a black coat and pair of pants, and next went into the small room, where the defendant still was, and there he examined the saddle-bags first. He then looked under the bed and discovered the box in which the missing goods were found. The house was the property of Alvarez. Upon finding the goods the witness arrested the defendant and Alvarez, and took them and the goods found to the justice of the peace. He shortly returned with another search warrant, and then arrested the wife of Alvarez.

Faustino Villareal recognized the saddle recovered from the Alvarez house, as the one stolen from him the night before the arrest of the defendant and Alvarez. It was found in the room in which the defendant was arrested.

The witness had never seen the defendant before his arrest.

Louis Kowalski testified, for the defense, that as a business man and politician he knew nearly every man in Brownsville. He was custom-house officer in Brownsville. He knew the defendant. In the beginning of the year 1881, the defendant worked for the witness's mother. He afterwards disappeared, and witness heard nothing more of him until his arrest. The defendant has two sisters, one living in Matamoras, and one living with the witness. The defendant was in Brownsville during the first part of the year 1881. The witness knew nothing personally of his going away.

Elisha Campbell, for the defense, testified that he was acquainted with Pedro Alvarez, who owned the house in which the stolen goods were found. The witness was present when the arrests were made. Alvarez, wife, daughters and defendant were in the house and Refugio Gomez was in the kitchen. Gomez heard the order or search warrant read, and ran out and attempted to mount the witness's horse. He did not succeed, but ran on down the street and escaped. This witness had heard a conversation between Gomez and defendant, in which Gomez, speaking of having rented the small room, said he had to pay Alvarez one dollar for it. He had several times seen Gomez at Alvarez's house, previous to the arrest. Gomez left his shoes when he ran away. The defendant made no effort to escape.

Juana Casas, defendant's sister, testified that for eight or nine years past the defendant had resided at Corpus Christi, having left the neighborhood of Brownsville and Matamoras when he was ten or twelve years of age. He had been back but twice since; the last time he returned was about fifteen days before his arrest.

Buterera, for the defense, testified that when he arrested the defendant he told him the reason of his arrest. The

defendant immediately denied any knowledge or participation in the theft, and declared that he had been in Brownsville but two or three days, and was from Corpus Christi.

Silvario Maza testified, for the defense, that he knew Gomez before arrest of defendant, but did not know where Gomez went to. When in Brownsville, Gomez stayed at Alvarez's house. Guadalupe, the man referred to by Fierling as the man who worked in the steamboat office, was, when the trial was had, on the Mexican side of the Rio Grande, but was in Brownsville when these parties were arrested, and for six weeks after.

Campbell, in rebuttal, testified that he saw the defendant at the Alvarez house on four different days, before his arrest; the first time as many as seventeen days before the arrest.

No brief for the appellant has reached the hands of the Reporters.

*H. Chilton,* Assistant Attorney General, for the State.

Hurt, J. On the 1st day of June, 1881, the shop of one Andreas Fierling was rifled of its contents, consisting of a variety of goods, such as are ordinarily kept in a village tailor shop. A search warrant was issued, and by a policeman of the town of Brownsville the house of Pedro Alvarez was searched and the goods found therein. Pedro Alvarez, Margarita Molano and defendant, Angel Casas, were arrested. Pedro and Margarita were jointly indicted and tried. Pedro was convicted and Margarita acquitted.

One Refugio Gomez and appellant were jointly indicted for the same theft. Gomez, when the search was being made, fled, and has not been captured. Appellant was tried and convicted; the jury assessing his punishment

at confinement in the penitentiary for the term of two years.

The defendant, when the house was searched, was found in a sleep on a bed in a small room of the house of Alvarez. When arrested, on being informed of the charge, he denied having any knowledge of the matter. His saddle-bags being examined, no fruits of the crime were discovered. Under the bed, however, in a box was found some of the stolen property. With this box it was not shown that defendant had any connection whatever; nor is it shown that defendant had control of the room in which he was sleeping. On the other hand, the evidence tends to prove that Refugio was the occupant of the room,— he who broke and made good his escape, when he learned the business of the officer. The only fact tending to implicate defendant is "that some of the goods were found in this box." Under the circumstances of this case, we are of the opinion that this is not sufficient. (The Reporters will give the evidence in full.)

The court should have granted the defendant a new trial. The judgment is reversed and the cause remanded, with a new trial awarded.

*Reversed and remanded.*